(120 App. Div. 628)

## ROWLAND v. ELY et al.

(Supreme Court, Appellate Division, Third Department.  June 25, 1907.)

1. SALES—CONTRACTS—ORDER FOR GOODS—ACCEPTANCE.

    A dealer requested samples and prices of tomatoes of a commission broker.  The broker replied, quoting grades and prices, but not mentioning samples, to which the dealer answered as follows: "We note what you say about strictly top, full packed, ripe tomatoes, etc.  *  *  *  If you cannot buy for 75 cents, pay 77½ cents.  *  *  *  Let us have them as soon as you can."  *Held*, that it constituted a full order, and the broker was authorized to make a purchase of tomatoes of the specified grade, without submitting samples.

2. SAME—PERFORMANCE—QUALITY OF GOODS—QUESTIONS FOR JURY.

    In an action for the contract price of a shipment of a certain grade of tomatoes, what that grade meant in the trade, and whether the tomatoes furnished were of that quality, were questions for the jury.

Appeal from Special Term, Broome County.

Action by James L. Rowland against S. Mills Ely and another. From an order setting aside a verdict and granting defendant a new trial, plaintiff appeals.  Affirmed.

The plaintiff is a commission merchant living in Baltimore.  The defendants are wholesale grocers located at Binghamton, N. Y.  Upon September 11, 1903, the defendants wrote to the plaintiff a letter, to the effect that they wanted some more tomatoes, both gallons and three pound packages.  In that letter they said: "We want full cans of ripe, red fruit.  Kindly send us samples with price, and oblige."  On September 14th the plaintiff replied in part: "We can offer you some standard tomatoes at 75 cents.  We can give you some strictly top, full packed, nice ripe tomatoes at 77½ cents.  We expect to be able to supply you with the gallons at $2.10.  This is the lowest that any good gallons can be bought for.  Most of the packers are getting $2.15 to $2.20.  There is a good demand for gallons, and not many being packed; but we have one lot that are strictly top quality which we can ship you with the three pounds at $2.10, and include the three pounds of strictly top quality of goods at 77½ cents.  Would say we have sold the most of this party's goods at 80 cents, and they are something strictly choice in quality."  To that letter upon the 15th of September the defendants replied: "Yours of the 14th instant received.  We note what you say about 'strictly top, full packed, ripe tomatoes,' etc.  Well, that is what we want.  If you cannot buy for 75 cents, pay 77½ cents.  Have an attractive label.  We have just unloaded a car here that cost that, and they are fine, too.  Let us have them as soon as you can."  Upon September 17th, the plaintiff replied in part: "We herewith inclose contracts for the three pounds and gallon tomatoes.  We will arrange to have these shipped together as one car load.  The three pounds are ready to go forward at any time as soon as the gallons are received, and we will try and have the gallons here in a few days, and you will find them both of strictly top quality."  In that letter were two papers in form as follows: (1) "Baltimore, Sept. 17, 1903.  Bought of H. W. Roberts, Clara, Md.  For account of S. Mills, Ely Company, Binghamton, N. Y., 300 cases half dozen each standard gallon tomatoes at $2.10 per dozen.  Terms: Net cash f. o. b. Baltimore.  Ship: J. L. Rowland & Co., brokers." (2) "Baltimore, Sept. 17, 1903.  Bought of D. J. Elliott, White-Haven, Md.  For account of S. Mills, Ely Company, Binghamton, N. Y., 500 cases 3lb. full standard tomatoes at 77½ cents.  Terms: Net cash delivered f. o. b. Baltimore.  Ship: J. L. Rowland & Co., brokers."  Upon the 18th of September the defendants replied to this letter as follows: "Please send us sample of the tomatoes that you inclosed contract for.  We want to see them before we settle the matter.  You don't need to send us a gallon tin, a 3lb. tin I guess will do just as well.  But as there are two different packers, if goods are all right as you seem to think they are—'top quality, strictly'

—why, that is enough. We had a fellow offer to furnish us firstclass top quality for 75 cents for 3lb., but that don't matter, if yours are as you said they are, enough said. Let us see the samples."

There were subsequent communications between the parties in which the plaintiff claims that the goods were strictly top quality. The defendants made objections as to the terms "net cash, Baltimore," and claimed the usual credit, and objected to a sight draft for the tomatoes. Upon September 29th the 500 cases of the three-pound tomatoes were forwarded by freight from Baltimore. Upon the 30th, the defendants, having received notice of that fact, wrote to the plaintiff that he had no right to ship the tomatoes and draw a sight draft, and said: "We wrote you we would not accept tomatoes without seeing samples first." To that upon October 1st, the plaintiff replied in part: "We overlooked the fact that we promised to send you the samples of the Elliott tomatoes as soon as they arrived. We drew samples and examined them and found them strictly top goods, full pack, nice red ripe tomatoes. We are, however, sending you two cans this p. m. by express, charges prepaid, and think you will find them as represented by us." After that there was still further correspondence in reference to the quality of the tomatoes. An order was given by the plaintiff upon the railroad company to allow the defendants to inspect the car. The defendants did in part inspect the car and rejected the tomatoes. For the value of these tomatoes, at 77½ cents per can, this action is brought. Upon the trial the plaintiff secured a verdict. Mr. Justice Forbes presided at the trial. Thereafter Mr. Justice Forbes died, and a motion for a new trial was made before Mr. Justice Sewell, who granted the same. No opinion was written upon the granting of the order for a new trial, and from the order the plaintiff has appealed to this court.

Argued before SMITH, P. J., and CHESTER, KELLOGG, and COCHRANE, JJ.

Mangan & Mangan, for appellant.

T. B. & L. M. Merchant, for respondents.

SMITH, P. J. The correspondence between the parties in this action is so voluminous that it is impossible to set it forth in an opinion. Whatever contract was made was probably entire, and a failure to deliver part would be a failure to perform the contract, if it had not been waived by the defendants. In their correspondence, however, in reference to the matter, defendants made no objection on the ground that the gallons were not in fact delivered; but their objections went to other matters entirely, so that they cannot now be heard to say that the reason they did not take the tomatoes was that only a part delivery had been made of the entire contract. The defendants further claim that there was no agreement to buy, except through sample, and that as no order had been made, and no contract consummated, after the sending of any samples, there was no agreement upon which the defendants can be held liable. After the letter, however, of September 14th, which stated what the plaintiff had for sale, upon September 15th the defendants apparently gave their full order without asking for a sample. Upon that order we think that the plaintiff was authorized to make a purchase, provided the goods were strictly top quality, as stated in his letter of September 14th. It appears afterwards that this carload was sent upon September 29th by freight. Upon October 1st the plaintiff also sent samples of the car load by express. Mr. Leighton, one of the defendants, swore that he had entire charge of the transaction with the plaintiff and dictated all the letters. He also swore that he

received samples, although he thought they came after the car was there. He did not remember that he examined the samples, and that he had nothing whatever to do with the samples. As the supplies were sent by express only two days after the goods were shipped by freight, if the defendants had in good faith desired to insist upon their right first to examine the samples, they might have done so. Their failure, however, to examine the samples, as is apparent from the testimony of Mr. Leighton, one of the defendants, indicates that that was not insisted upon as a material condition of the purchase.

If we assume, then, by the letter of September 15th, authority to purchase for the defendants, the authority was to purchase tomatoes which were strictly top in quality. In the sales memoranda sent with the letter of the 17th, the three-pound cases were called full standard, while the gallon cases were called standard. In the letter, however, accompanying they were spoken of as strictly top quality. Referring back, however, to the letter of the plaintiff of September 14th, he makes a distinction between the standard tomatoes and strictly top full pack nice ripe tomatoes. One is quoted at 75 cents, and the other at 77½ cents. There is a diversity of evidence as to the meaning of the term "strictly top tomatoes" in the trade, and if, as we construe the contract, the plaintiff was bound to furnish strictly top tomatoes, it should have been left to the jury to say whether the tomatoes which were sent were strictly top tomatoes; but the learned trial judge, after he had charged the jury that they were required to furnish strictly top tomatoes, upon the suggestion of plaintiff's counsel, varied his charge, and charged that the contract calls for full standard tomatoes, and that they were bound to take the evidence of the plaintiff as to what "full standard tomatoes" meant. To that charge an exception was duly taken. That exception was, we think, well taken. At no time do we find any agreement on the part of the defendants to take any tomatoes except strictly top tomatoes. What this term meant in the trade, and whether the tomatoes furnished were of that quality, were the two questions to submit to the jury, and for a failure of the trial judge to submit those questions to the jury the Special Term properly directed a new trial.

Order affirmed, with costs. All concur; COCHRANE, J., in memorandum.

COCHRANE, J. I concur in the result. I do not agree, however, that the letter of September 15th constituted a "full order," without samples. This letter should be construed in connection with the rest of the correspondence. Defendants, in their previous letter of September 11th, had asked for samples. It was not necessary that in each letter they should repeat that requirement. In the very next letter of September 18th the requirement for samples was again repeated. The letter of September 15th clearly is not a "full order," because it says nothing whatever about the gallons, and nothing about the quantity of the three-pound cases. It was only by reading it in connection with the previous letter of September 9th that plain-

tiff was able to make the purchase of gallons and three-pound cases. But if we assume that the letter of September 15th authorized the plaintiff to purchase without sending samples, such authority only extended to the purchase of 300 three-pound cases; whereas, plaintiff in fact purchased 500 such cases. If up to that time nothing had been said about samples, defendants clearly had a right to insist on samples before assenting to the purchase of 500 cases; and this they immediately did in unmistakable terms. There can be no claim or pretense that thereafter the defendants authorized or ratified the purchase. In all this correspondence I cannot find that the minds of the parties ever met on any proposition.

I think, therefore, that the order was properly granted, for the reason, therein recited, "that the minds of the parties did not meet so as to form a contract."